UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

UNITED STATES OF AMERICA,

             - against -                         Docket No. 21 Cr. 277 (PAE)

JAMES BRADLEY,

                       *Defendant.*

-------------------------------------------------------------x

**SUPPLEMENTAL SENTENCING MEMORANDUM FOR JAMES BRADLEY**

Richard J. Ma, Esq.
20 Vesey Street, Suite 400
New York, New York 10007
Tel: (212) 431-6938
richardma@maparklaw.com

Anthony Cecutti, Esq.
217 Broadway, Suite 707
New York, New York 10007
Tel: (212) 619-3730
anthonycecutti@gmail.com

Kestine M. Thiele, Esq.
217 Broadway, Suite 707
New York, New York 10007
Tel: (212) 542-3460
kestine@kthielelaw.com

# RICHARD J. MA, ESQ.

20 Vesey Street, Suite. 400
New York, New York 10007
Tel: (212) 431-6938
Fax: (212) 964-2926
E-mail: richardma@maparklaw.com

January 31, 2023

*Via ECF and Email*
Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:  *United States v. James Bradley*
21 Cr. 277 (PAE)

Dear Judge Engelmayer:

This letter is submitted on behalf of Mr. James Bradley to briefly reply to The Government's Sentencing Memorandum As To Defendants James Bradley and Arwa Muthana, dated January 26, 2023 ("Govt Memo"), and in further support of our requested sentence. Mr. Bradley is scheduled to be sentenced on February 2, 2023.

In its submission, the Government recommends a sentence of 180 months of imprisonment or more. In support of its recommendation, the Government is dismissive of James's deradicalization counseling and casts skepticism upon the defense experts' findings. By recommending a sentence double that of Mohammed Delowar Hossain, the older male who recruited, radicalized and groomed James, the Government also completely disregards the need to avoid unwarranted sentencing disparity. They rely instead on fear-mongering by presenting an exaggerated, distorted account of the facts and circumstances of this case. However, as set forth herein, the Government fails to present persuasive argument or authority supporting its recommendation.

### *James Bradley's Deradicalization Counseling Compels a Sentence of Time-Served*

The Government seems to understand that the radicalization of American youths is the specific goal of sophisticated radicalization campaigns enacted by foreign terrorist organizations, including ISIS. (*See* Govt Memo at pp. 7-8 ("ISIS, like many other terrorist organizations, makes use of social media, Internet platforms, email and end-to-end encrypted communication services and applications, such as Signal, Telegram and WhatsApp. Through these means, ISIS has disseminated a wide variety of recruiting and

2

training materials and propaganda…These materials serve ISIS's goals of spreading its message, recruiting supporters, enticing individuals to travel to ISIS-controlled parts of the Middle East to fight for the group, and inspiring acts of violence in the United States and elsewhere.")).  The Government also appears to understand that deradicalization is a critical component of this nation's criminal justice system and counterterrorism efforts.  (*See* Govt Memo at p. 44 ("However admirable, and important, the work of the organization…")).    Moreover, the Government does not dispute Professor Arie W. Kruglanski's "significance quest theory" or its relevance to James Bradley.    (*See* Sentencing Memorandum for James Bradley ("Bradley Memo") at pp. 8-11).  And yet, aware that James engaged in deradicalization counseling for 18 months, and having had the opportunity to meet with and question his counselors,[1] Professor Mubin Shaikh and Mr. Pardeep Kaleka of Parents For Peace ("PFP"), the Government nevertheless now asks the Court to reject their invaluable contributions to impose a sentence that is grossly excessive and contrary to science.  One that will permanently derail a young man's life. That is both bewildering and unpersuasive.

Radical extremism is above all else a public health issue, and James Bradley epitomizes this dilemma.  At his core a bright, snappy and empathic teenager, James was brain-washed and indoctrinated into falsehood and retribution.  His restoration requires truth and support.   The defense approach was sensible and straightforward: use the valuable time during the pandemic-delayed pendency of the case to effectuate as much positive change as possible through deradicalization counseling.  Just 19 years-old at the time of his arrest, James's still-developing brain was fragile, in dire need of positive influence.   Making matters worse, he was incarcerated at the onset of the COVID-19 pandemic, which meant that he was subject to long periods of isolation under abominable conditions.  Thus, it was crucial for James to have social interaction centered around his growth and an uncorrupted understanding of Islam.

After 18 months (approximately 72 sessions) of structured counseling with dedicated and experienced counselors, the results are nothing short of a success.  James Bradley, who was once prepared to leave his family, risk incarceration and possibly sacrifice his life for his warped ideology — the same zealot who, while radicalized, was unwilling to even *fake* sinful activity (*see* Govt Memo at pp. 5-6) — disavowed foreign terrorist organizations, violence and extremism.  (*See* Letter of James Bradley, Bradley Memo, Exhibit A at p. 1).  A still-radicalized James Bradley would have simply been unwilling and incapable of such a public disavowal.   Importantly, Professor Mubin Shaikh and Mr. Pardeep Kaleka were ever-vigilant of prevarication and malingering during the process.  (*See, e.g.,* Report by Parents For Peace ("PFP Report"), Bradley Memo at Exhibit D, at p.12 ("PFP deals with many cases of radicalization and extremism

---

[1] On August 12, 2022, the prosecution team met with Professor Shaikh and Mr. Kaleka at an arranged meeting at the U.S. Attorney's Office, during which the parties discussed James Bradley's deradicalization counseling and the prosecutors were able to question the counselors about details of the counseling.

and the expertise of Mubin Shaikh has shown how individuals may be deceitful or otherwise do not graduate past the challenging phase of their intervention.  In these cases, some individuals who fail to engage honestly with themselves may double down on their ideology in the face of challenge.  That was not the case with James.")).

Consistent with the findings of Parents For Peace, Dr. Adeyinka M. Akinsulure-Smith evaluated James and determined that he is a low risk of future violence, particularly if he has access to the robust regimen of programming incorporated in the defense sentencing request.   (*See* Psychological Evaluation by Dr. Akinsulure-Smith ("Akinsulure-Smith Report"), Bradley Memo at Exhibit C, p. 21).   In its attempt to disparage the defense experts, the Government argues that, because they did not review the hundreds of hours' worth of discovery materials, their determinations must be rejected.   (*See* Govt Memo at pp. 43-45).   These are trained, experienced and knowledgeable experts in their fields, who dedicated great amounts of time and energy to their respective tasks, resulting in thorough, substantiated and well-developed submissions to the Court.  Yet, the Government wants this Court to believe that Professor Shaikh, a formerly radicalized extremist and widely accredited counterterrorism expert who has made it his life's work to fight radical extremism, irresponsibly stumbled through 18 months of deradicalization with no idea, concept or conversation about the offense conduct.   And while Dr. Akinsulure-Smith most certainly did not waste her valuable time listening to hundreds of hours of recordings to conduct a psychological evaluation, she reviewed the accusatory instruments, discussed the case with the defense and consulted with Professor Shaikh and Mr. Kaleka multiple times.   (*See* Akinsulure Smith Report, Bradley Memo at Exhibit C, p. 3).   More importantly, Dr. Akinsulure-Smith spent 6 long meetings with James over the course of 8 months (*id.*) with the specific objective of assessing James's mental state over a protracted period of time, while James was undergoing deradicalization counseling.   The work of the defense experts is simply beyond cavil.

Most alarming of all, the Government misappropriates James's statements made during his counseling to suggest that he is minimizing his conduct or lying.  (Govt Memo at p. 45).   James's statements were used by PFP in its report to illustrate James's evolution in the midst of the *second* of *three* phases of the deradicalization process.  (*See* PFP Report, Bradley Memo at Exhibit D pp. 4,6).   Rather than focus on James's disavowal, or comment on the indisputable progress, the Government instead pulls the statements of a radicalized teenager, made during the course of ongoing counseling, out of context.   That is unconscionable, exemplary of the Government's paucity of meaningful argument and should be summarily discredited by the Court.

To be clear, James still has much more work to do.   The defense sentencing recommendation is premised upon the understanding that now that James has been deradicalized, the real work begins.  To continue to grow and develop at his age, James must be removed from the prison environment, where negative influences and

reradicalization risks abound. He requires the safety, structure, stability and normalcy of his family. As PFP and Dr. Akinsulure-Smith both advocate, James needs access to services, counseling and education that are most effective and impactful in the community rather than in prison. Notably, the only way to assess James's disengagement is for James to be in the community. For, it is only in the context of a real-world setting that behavior change is possible. Based upon PFP's work with James, they anticipate his disengagement. (PFP Report, Bradley Memo at Exhibit D p. 3). The best way to ensure James's transition into society and disengagement is with ongoing individual, group and family counseling, coupled with educational or vocational programming, as per the defense sentencing recommendation.

### The Government's Sentencing Recommendation Creates Unwarranted Sentencing Disparity

The Government's recommendation of at least 180 months of imprisonment undermines the goal of avoiding sentencing disparity among similarly situated defendants. Specifically, a sentence of double the 96-month term of imprisonment imposed upon related defendant Mohammed Delowar Hossain (19 Cr. 606 (SHS)), would be plainly unjust. Hossain, who did not accept responsibility for his actions and was convicted after trial, was an older man who recruited 17 year-old James, initiated his radicalization and groomed him. He was the leader of his conspiracy, amassing equipment and weaponry; recruiting numerous individuals in addition to James; and engaging in sophisticated planning and operative-type behavior to evade law enforcement. Probation agrees. (PSR at p. 23 ("We also considered the sentence of related defendant, Hossain, who initially "recruited" Bradley and influenced his extremist views. We note that Hossain, despite not accepting his responsibility by putting the Government to the burden of proving his guilt at trial, received a significant below-guideline sentence of 96 months' imprisonment")). The Government conveniently labels Hossain's sentence an outlier and offers only its unsubstantiated opinion that Hossain's sentence should be "discounted." Judge Stein, however, observed that Hossain had no criminal history and noted that Hossain's plan was unlikely to succeed and had no identifiable victim. Noting Judge Stein's rationale, Probation posits that James is less culpable than Hossain and appropriately recommends a sentence below Hossain's 96 months of imprisonment. (PSR at p. 23).

The Government identifies numerous other cases to support its assertion that a sentence of at least 180 months of incarceration would not create significant sentencing disparity. These are similarly unpersuasive. No other case cited by the Government presents as compelling a combination of facts and circumstances as James Bradley. His young age at the time of offense; participation in deradicalization counseling;[2] family structure and support; lesser offense conduct; and acceptance of responsibility through

---

[2] As previously submitted, we believe that James Bradley is the first and only federal criminal defendant to successfully engage in deradicalization counseling during the pendency of a case.

guilty plea all distinguish him from the other cases and justify our requested sentence of time-served with counseling. (*See United States v. Raishani*, 17 Cr. 421 (RA) (S.D.N.Y.) (the defendant, who was 32 years-old at the time of sentence, helped send another individual to the Middle East to join a foreign terrorist organization, tried to recruit his wife to his extremist cause and never deradicalized or disavowed extremism); *United States v. Alimehmeti*, 16 Cr. 398 (PAE) (S.D.N.Y.) (as this Court is aware, the defendant, who had a prior criminal history, was responsible for recruiting and radicalizing other individuals, amassed weapons, engaged in fraud and never expressed remorse or disavowal); *United States v. Farhane, et.al.,* No. 05 Cr. 673 (LAP) (S.D.N.Y.) (the defendant, who was 52 years-old at the time of sentence, was convicted after trial, committed perjury at trial and engaged in detailed plans to provide assistance and physical martial arts training to a foreign terrorist organization); *United States v. Clark*, No. 20 Cr. 76 (NRB) (S.D.N.Y.) (the defendant was 42 years old; spread enormous quantities of not only propaganda, but attack training manuals and bomb-making instructions; and was involved in radicalizing others); *United States v. Badawi, et.al.*, No. 15 Cr. 60 (C.D. Cal.) (two 25 year-old defendants were sentenced to 15 years of prison for recruiting another individual and engaging in bank fraud); *United States v. Pugh*, No. 15 Cr. 116 (NGG) (E.D.N.Y.) (the defendant, a former U.S. Air Force veteran who was 48 years-old at the time of sentence, was convicted after trial, obstructed justice by destroying evidence, and was engaged in extensive planning and pledged to give his military training to a foreign terrorist organization); *United States v. Zea*, No. 13 Cr. 72 (JSF) (E.D.N.Y.) (the defendant recruited others, obstructed justice, purchased a rifle and made no disavowal); *United States v. Kourani*, 6 F.4th 345 (2d Cir. 2021) (the defendant was convicted after trial, trained in the military, gathered explosives and had an extensive network of planning).   None of these cases nor any other case referenced by the Government pose a comparable set of facts and circumstances to James Bradley.

In addition to the cases previously cited in the Bradley Memo, a trio of recent cases are more relevant as precedent to the instant case.  In *United States v. Asher Abid Khan*, No. 15 Cr. 263, ECF No. 188 (S.D.Tex. 2019), the defendant expressed radical Islamist views online, discussed his desire to join ISIS, agreed with a friend to travel to the Middle East, contacted someone in Turkey to arrange travel to join ISIS and traveled overseas before returning home to Texas.  In sentencing the defendant to 18 months of imprisonment, the sentencing court considered the fact that he did not truly have a desire to influence a foreign government, that he was remorseful and that he appeared to have rehabilitated himself.  In *United States v. Islam Said Natsheh*, No. 16 Cr. 166 (RS), ECF No. 20, 23 (N.D.Cal. 2016), the defendant posted comments on social media supporting ISIS and attempted to travel to Turkey (and ultimately Syria) to join ISIS.  The district court sentenced him to 60 months, considering his young age, history of depression and other mitigating factors.  In *United States v. Aaron T. Daniels*, No. 16 Cr. 222, ECF No. 87, 93 (S.D. Ohio 2018), the defendant expressed interest in jihad, contacted an ISIS recruiter, sent money to a member of the Islamic State and attempted to travel to Libya to

join ISIS.  In consideration of mitigating factors, including the defendant's mental health conditions, the district court sentenced him to 80 months' incarceration.

We understand that each defendant presents a unique set of circumstances and James Bradley poses unique positives as well as challenges for the Court's consideration. However, for the reasons submitted herein, our recommendation for James Bradley is appropriately less severe than incorporated under the rubric of the Guidelines, and is consistent with the sentences of other similarly situated defendants.

\* \* \*

We are compelled to remind the Court that, while the offense conduct here is unquestionably serious, it falls well short of deserving of the type of punishment recommended by the Government.  The Govt Memo repeatedly employs hyperbole to mischaracterize James's conduct.  For example, the Government applies terms such as: "took concrete steps to perfect and carry out" (Govt Memo at p. 4); "Bradley also made plans to murder innocent Americans at West Point and at SUNY Albany" (Govt Memo at pp. 31-32); "Bradley also prepared to carry out a lone-wolf attack" (Govt Memo at p. 39, 41, 42, 46).  Similarly, the Government repeatedly highlights a machete (Govt Memo at pp. 25, 44), even though it is well aware that James never used the machete for any purpose other than gardening and landscaping, and did not even bring it with him on his attempted travel to Yemen.  These are attempts to deliberately arouse fear or alarm and the Court should not be moved.

Despite James's admittedly concerning and offensive diatribe, the reality is that James did little to advance the thoughts into actual actions.  Thus, James never committed violence of any sort.  He never amassed or stockpiled weapons, explosives or equipment. James never engaged in detailed planning or preparation to any degree beyond ideation and talk.  He did not recruit or lead others.  When apprehended, James did not resist arrest or attack law enforcement.  He never "scoped" or visited any location for the singular purpose of planning an attack.  He had no prior criminal history or history of violence.  His truck was never used for any purpose other than employment.  He never did any of these things even though he was surveilled from the commencement of his radicalization and for the balance of three years.  We respectfully submit that this is because James did not have the capacity or wherewithal to actualize his violent talk. Significantly, at 17 through 19 years-old, James was surrounded by older men who encouraged and supported James's extremism.  Through his boasts and bravado, James sought significance, validation and the approval of his newfound community.

We are aware of the significance of our sentencing request.  However, our request was not the result of hyperbole or requesting the lowest possible sentence.  Our request is guided by science and the determination of our esteemed experts who carefully and painstakingly evaluated James Bradley's history, characteristics and capacity for rehabilitation.   By contrast, the Government, in discrediting the deradicalization and defense experts, makes its myopic sentence recommendation solely for retribution and incapacitation.   The Government seeks to take away 15 years of the prime of James Bradley's life.  Even though we are dealing with unactualized, disavowed conduct by a teenager.  The Government's strategy here is transparent.  It willfully, yet unconvincingly dismisses every other factor relevant to making an honest sentencing determination.  In its desperation to justify its draconian sentencing request, the Government can only provide an embellished and overdramatized recounting of the offense conduct.

We are confident that if the Court carefully considers James Bradley's background and circumstances, it will understand the context of his transgressions and impose a sentence that is reflective of his role and accounts for the factors of 18 U.S.C. § 3553. We continue to believe that a sentence of nearly 2 years of incarceration with a continued, demanding treatment regimen upon release is a just punishment that is sufficient but not greater than necessary to achieve the goals of our criminal justice system.  It is a sentence befitting of James Bradley's role in the conspiracy and credits his circumstances and positive characteristics while simultaneously dispensing a dolorous punishment.

We thank the Court for its consideration of the issues presented herein.

*Respectfully submitted,*

/s/ *Richard J. Ma*

Richard J. Ma, Esq.
Anthony Cecutti, Esq.
Kestine Thiele, Esq.

*Counsel to James Bradley*

cc via e-mail:  A.U.S.A. Kaylan E. Lasky
                  A.U.S.A. Jason A. Richman